# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 9, 2015

Plaintiff-Appellee,

v

No. 317282
Jackson Circuit Court
LC No. 12-003652-FC

TODD DOUGLAS ROBINSON,

Defendant-Appellant.

Before:  K. F. KELLY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of premeditated first-degree murder, MCL 750.316, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  He was sentenced to life in prison without parole for the murder conviction and an additional two years for the felony-firearm conviction.  We affirm.

Defendant was convicted of shooting and killing the victim as part of a drug deal involving promethazine.  The evidence against defendant was both direct and circumstantial.  Two witnesses—Joe Kelley and Troy Heard, both long-time friends of defendant—testified that the three men were playing their regular game of dominoes at Kelley's house.  Kelley testified that defendant went to the kitchen to talk with someone, probably a man but Kelley did not know who it was, and went out the back door with the person.  Minutes later, Kelley heard a gunshot from "out back."  Heard went outside briefly, returned, and said he had to leave.  Kelley saw defendant looking in his truck, saw a man he did not recognize lying down by the fence, and called 911.  On cross-examination, Kelley said that he did not see defendant with a gun that night.

Heard testified that someone knocked at the back door, and defendant answered.  Heard identified the victim as being the man at the door.  Defendant and the victim were negotiating over the sale of promethazine.  Defendant came back to the table, laid a gun on the table, and said "it ain't gonna go down like they think."  There was another knock at the back door and defendant answered.  Heard then heard what sounded like a gunshot.  Heard looked out the kitchen window and saw defendant move the victim to the fence.  As Heard was leaving, defendant said that the victim drew a gun on him and walked him out of the house.  The next morning Detective Stiles went to Heard's house and Heard told a different story.  Later, Heard

-1-

got arrested with a gun, and Stiles again came to see him. Heard testified that he had a gun charge pending but expected nothing in exchange for his testimony at defendant's trial.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that his conviction should be overturned because the evidence used against him was insufficient, incompetent, and inadmissible. Defendant contends that the prosecution introduced propensity evidence that defendant was a coward and had a reputation of carrying a .38-caliber gun and inadmissible hearsay evidence from Kelley, a police informant, that defendant was the shooter. Further, defendant maintains that Heard's testimony was improper because the jury was repeatedly told there was no deal to dismiss unrelated charges against Heard in exchange for his testimony when there was in fact a deal.

This Court reviews de novo challenges to the sufficiency of the evidence. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). Whether there is sufficient evidence for conviction is determined by whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. All conflicts regarding the evidence are drawn in favor of the prosecution, and circumstantial evidence and reasonable inferences that may be drawn from that evidence may be sufficient to prove the elements of the crime. *Id*. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"To prove first-degree premeditated murder, the prosecution must establish that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000); MCL 750.316(1)(a). Premeditation requires that there be sufficient time to permit the defendant to take a second look and this may be inferred from the circumstances surrounding the killing. *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998).

While defendant's statement of questions presented states that his argument is that the evidence was insufficient to support his conviction for first-degree murder, a significant portion of his argument addresses the admissibility of evidence. Defendant's arguments for the inadmissibility of evidence are vague, and he fails to assert the specific grounds. It can only be presumed defendant means to assert that some evidence was improperly admitted and without this evidence there was insufficient evidence to support his conviction. This Court reads all conflicts regarding the evidence in favor of the prosecution. *Lockett*, 295 Mich App at 180.

Defendant misreads and misconstrues many of the facts below. Defendant failed to object to much of the evidence he now challenges as inadmissible. Much of this evidence was introduced by defendant. But first, we must address the argument that there was an undisclosed deal in place between the prosecutor and Heard in exchange for his testimony. During oral argument in this Court, the prosecution conceded that there had, in fact, been a deal reached with the witness granting immunity on a possible future charge against him. Accordingly, we remanded the matter to the trial court to address this issue. In particular, we directed the trial court to determine whether the error was nevertheless harmless. The trial court conducted an extensive evidentiary hearing. The trial court stated that it appeared that, at trial, the prosecutor

and the witness appeared to think that the question of immunity related to the existing charges against the witnesses rather than the possibility of a future charge arising out of this case. The trial court also noted that defense counsel was aware of the grant of immunity related to a potential future charge arising out of the instant case. Ultimately, the trial court concluded that there was no reasonable likelihood that disclosure of the grant of immunity would have affected the outcome and that the error was harmless. We are not persuaded that the trial court erred in this determination.

Next, the testimony from Detective Stiles, that Kelley allegedly said if the victim was shot in the back of the head defendant was the shooter because he was a coward, was elicited on cross-examination by defendant for the clear purpose to examine a previous statement of Kelley and his bias and credibility. Defendant cannot challenge the admission of his own evidence as improper propensity evidence. Defendant fails to explain why this Court should rule that evidence he introduced was improper and why it should not be admissible when used for a proper purpose to show the bias of the witness.

Evidence that defendant possessed a .38-caliber firearm was admissible. The testimony was introduced in multiple ways and it is unclear what defendant challenges on appeal. The evidence was introduced on the cross-examination of Stiles as to prior inconsistent statements of Kelley. Defendant cannot challenge the admission of his own evidence, and he fails to explain how this was improper propensity evidence and not impeachment. The other mentions of the gun were as part of plaintiff's case-in-chief testimony of Detective Stiles, referencing a prior inconsistent statement of Kelley's that defendant shot the victim with a .38-caliber firearm, and on redirect examination Stiles explains how Kelley was aware defendant carried a .38-caliber firearm. All of this was proper and defendant fails to allege how it was improper.

Defendant fails to allege how Kelley's testimony was improper and what portions were improper hearsay. Further, there was nothing incredible about Heard's testimony and it was not unusual, only that it weighed heavily against defendant's innocence. Therefore, to the degree defendant alleges the evidence was improperly admitted, the allegation is without merit.

Applying all the evidence submitted to the court, regardless of defendant's allegations of inadmissibility, there is sufficient evidence to support defendant's guilt. Evidence was introduced to show that defendant had a .38-caliber firearm consistent with the weapon used to kill the victim. There were multiple instances of testimony that defendant (1) was with the victim right before the shooting as part of a drug deal, (2) stated while setting down a gun that "it ain't gonna go down the way they think" referring to the victim, (3) was seen moving the victim, (4) stated he shot the person, and (5) stated to law enforcement that he was present at the shooting. When taken together this is more than sufficient direct and circumstantial evidence to support the conviction. The evidence fits together and corroborates the other evidence. The evidence shows that defendant intentionally and premeditatedly killed the victim.

## II. PROSECUTORIAL MISCONDUCT

Next defendant argues that the prosecution engaged in several forms of misconduct. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 453-454, 678 NW2d 631 (2004). To avoid

forfeiture under the plain error rule: (1) the error must have occurred; (2) the error must have been plain, meaning clear or obvious; and (3) the plain error had to prejudice the defendant by affecting the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if this Court finds plain error, it will only reverse the lower court when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings regardless of a defendant's innocence or where the error resulted in an actually innocent defendant's conviction. *Id.*

Claims of prosecutorial misconduct are reviewed on a case-by-case basis with alleged improper remarks reviewed in context. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). The proper test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Howard*, 226 Mich App 528, 544; 575 NW2d 16 (1997). "No error requiring reversal will be found if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000). The prosecutor has a duty to disclose any promises made to secure a witness's testimony. *People v Rosales*, 160 Mich App 304, 310; 408 NW2d 140 (1987).

Defendant alleges that the prosecutor committed misconduct by (1) indicating in his opening statement that it might never be known what happened because defendant had no burden of proof and did not have to testify, (2) introducing testimony from Heard that was perjured and offered in exchange for a deal, and (3) eliciting testimony from Stiles that in his experience witnesses often change their stories. We find no plain error affecting defendant's substantial rights. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

Defendant alleges that the prosecutor committed misconduct by introducing Heard's testimony that was perjured and offered in exchange for a deal, the prosecutor's opening statement, and the testimony of Stiles that in his experience witnesses often change their stories. Defendant fails in all arguments.

With regard to the allegation that the prosecutor committed misconduct in his opening statement, defendant challenges the following:

> Now, what happened outside in that driveway I can't really tell you. There's only two people that are confirmed to be out in that driveway. One is Eshaum Gant, who has obviously passed away. The other person would have been Todd Robinson. And Todd Robinson is under absolutely no obligation to say anything. He has no burden, he doesn't have to testify and he – we may never know what Todd Robinson will say happened. But Todd Robinson did make a statement when he talked to Detective Brett Stiles right around this time frame when this happened.

It is unclear how this statement amounts to prosecutorial misconduct and, absent saying it is, defendant does not explain further. By all accounts and when reviewed for plain error there is no indication of misconduct in this statement. Defendant was not denied a fair and impartial trial because of this statement. *Howard*, 226 Mich App at 544.

Next, defendant alleges that the prosecutor committed misconduct in allowing the testimony of Heard, which defendant asserts was perjured and only offered as part of an undisclosed agreement with the witness. However, as discussed above, the trial court did not conclude that the prosecutor acted intentionally in withholding this information. Moreover, in light of the trial court's conclusion that this error was harmless, there can be no plain error.

Lastly, defendant challenges portions of the testimony of Detective Stiles. On direct examination, Stiles had just testified that he interviewed Heard twice and that the first interview was not consistent with Heard's trial testimony but the second interview was consistent. The following then ensued:

> *Q.* You said you've been a police officer for how long?
>
> *A.* Over 19 years now.
>
> *Q.* Do you often get situations where you speak to witnesses or individuals more than once?
>
> *A.* Yes.
>
> *Q.* Do you often get situations where the original story changes after another time—(inaudible)?
>
> *A.* Yes. Yes, I do.
>
> * * *
>
> *Q.* How often do circumstances like that happen with you?
>
> *A.* It happens quite often.
>
> *Q.* All right. So it's not a surprise to you when a story changes?
>
> *A.* Not at all.

This testimony from Stiles was not a statement of his opinion regarding whether any witness at defendant's trial was or was not telling the truth. It was merely a statement that, in his experience as a police officer, witnesses often change their story. This was not expert testimony as asserted by defendant.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's final argument is that his trial counsel provided ineffective assistance of counsel. "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary

hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant failed to move for a new trial or file a motion for a *Ginther*[1] hearing, this Court's review is limited to the appellate record. *Id.*

To establish ineffective assistance of counsel a defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order to show deficient performance, a defendant must show that counsel's performance was outside the wide range of professionally competent assistance as secured under the Sixth Amendment of the United States Constitution. *Id*. at 689. To satisfy the prejudice prong a defendant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In reviewing this issue, defense counsel is afforded wide latitude on matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defendant has not shown that his counsel's performance was deficient and that the deficient performance resulted in prejudice to him. *Strickland*, 466 US at 687. A failure to bring forward a meritless argument does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when 'it deprives the defendant of a substantial defense.'" *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), quoting *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005).

Defendant fails to show that trial counsel was ineffective. This Court's review is limited to the existing record. *Sabin*, 242 Mich App at 658-659. The majority of defendant's allegations rely on arguments outside the record. Defendant asserts that trial counsel was ineffective for (1) failing to object and conduct a reasonable investigation into the prosecution's deal with Heard, (2) failing to conduct a reasonable investigation into propensity evidence that defendant was known to carry a gun and propensity evidence from police informant Kelley, (3) eliciting and not objecting during the testimony of Stiles that defendant was a coward and might be the shooter, and (4) failing to make an opening statement, allow defendant to testify, make required motions to preclude the admission of evidence, and present witnesses on defendant's behalf .

Based on the record, defendant has failed to carry his burden to show that counsel was ineffective. In light of the trial court's conclusion that the error related to the nondisclosure of the deal with Heard, defendant could not have been prejudiced for counsel's failure to further

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-6-

address this issue. Additionally, trial counsel did assert that there was an implied deal and examined the witnesses in length on the issue. Defense counsel insisted to the Court he be allowed to proceed in this line of questioning. Therefore, counsel was not ineffective on this issue.

Secondly, the testimony that defendant was known to carry a .38-caliber firearm and was a "coward" was elicited and used by defense counsel as part of its overall strategy of attacking the bias and credibility of the witnesses. This Court will not substitute its judgment for that of trial counsel in matters of trial strategy. *Davis*, 250 Mich App at 368. Furthermore, the prejudicial effect of this testimony on defendant, if any, would be minimal. Moreover, this information was most likely introduced by the prosecutor under MRE 607 as impeachment evidence, and therefore counsel was not ineffective for failing to object.

Defendant's contention that trial counsel was ineffective for failing to object to the testimony of Stiles that witnesses often change their story because it was inadmissible fails because the evidence was admissible and was not expert testimony. Counsel cannot be ineffective for failing to make a meritless argument. *Ericksen*, 288 Mich App at 201.

Defendant fails to show any evidence on the record that illustrates that counsel was ineffective or failed to allow defendant to testify on his own behalf. Evidence that defendant contended he was not the shooter was brought forth in the testimony of Detective Stiles.

As for defendant's contention that overall counsel was ineffective for failing to present witnesses, failing to make an opening statement, and failing to file motions to exclude evidence, these are all presumed to be trial strategy and defendant fails to show any record facts to rebut this presumption. Absent a hearing, we are merely left to speculate why counsel waived his opening statement. Defendant does not name any witnesses that should have been offered to assist in his defense or elaborate on any specific meritorious motions to exclude any evidence.

There is no evidence that trial counsel was ineffective. In contrast the record establishes that there was a clear strategy on the part of defense counsel to show that the witnesses were biased against defendant, that the key witness against him was testifying solely to get a deal from the prosecution, and that the forensic evidence did not show that defendant was the shooter.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Patrick M. Meter